## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| MICHAEL CRAIG ROUCHON | CIVIL ACTION NO. 05-1150 |
| VS. | MAGISTRATE JUDGE METHVIN<br>BY CONSENT OF THE PARTIES |
| COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION | |

### MEMORANDUM RULING

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the court concludes that there is substantial evidence to support the Commissioner's finding. Accordingly, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED**.

*Background*

Born on July 30, 1962, Michael Craig Rouchon ("Rouchon") is currently 44 years old. Rouchon has a high school education and attended college for two years. He has worked in the past as a warehouseman.[1] On May 13, 1997, Rouchon applied for SSI benefits effective October 16, 1989, after an on-the-job accident that caused lumbar spine problems, carpal tunnel syndrome, anxiety, and fibromyalgia.[2] Rouchon later added depression to his list of impairments.

Following an administrative hearing, an ALJ denied benefits on September 19, 1998. The Appeals Council vacated the ALJ's decision and remanded the case. After a hearing, the ALJ issued a decision on February 8, 2000 finding that Rouchon was not disabled. The Appeals Council again remanded the case, directing the ALJ to obtain additional evidence. On May 28,

---

[1] Tr. 646.

[2] Tr. 89.

2004, the ALJ found that Rouchon could perform light work, and therefore he was not disabled. On April 27, 2005, the Appeal Council issued a decision finding that Rouchon was not disabled, which is the final decision of the Commissioner from which Rouchon now appeals.

*Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

A person applying for disability and/or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act, 43 U.S.C. §423(d). Initially, the burden is on the claimant to show that he cannot perform his previous work. Fraga v. Bowen, 810 F.2d 1296, 1301 (5th Cir.1987); Anthony, 954 F.2d at 293. Once the claimant satisfies his initial burden, the Secretary then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is therefore not disabled. Fraga, 810 F.2d at 1301-

1302; Johnson v. Bowen, 864 F.2d 340, 344 (5th Cir.1988).  In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings.  The Regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment.  Furthermore, § 404.1520a(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments.

Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[3]

---

[3] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

In the case at bar, the Appeals Council concluded that Rouchon's fibromyalgia was a severe impairment. The Appeals Council assessed Rouchon's residual functional capacity ("RFC") and concluded that he could perform the full range of light exertional work. Applying the Medical Vocational Guidelines, the Appeals Council concluded that Rouchon was not disabled because jobs exist that he could perform.

*Assignment of Errors*

Rouchon alleges the following errors: 1) the ALJ erred in failing to articulate the weight given to an examining consultant; 2) the Appeals Council erred in concluding that Rouchon's mental disorder was not severe; 3) the vocational expert's testimony was inadequate; and 4) the ALJ and Appeals Council's conclusions differ, and therefore the Appeals Council should have remanded the case to the ALJ to resolve the differences.

---

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment.
2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).
3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.
4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities*. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

*Findings and Conclusions*

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. §405(g), the court concludes that the Commissioner's findings and conclusions are supported by substantial evidence in the record.

**Administrative Record**

**Physical impairments:** In December, 1989, two months after an accident at work, Rouchon underwent a CT scan of the lumbar spine, which showed mild bulges at L4-5 and L5-S1, but was otherwise normal.[4] Almost two years later, on October 3, 1991, Rouchon was examined at University Medical Center ("UMC") complaining of low back pain which had persisted since his 1989 accident.[5] An x-ray of the lumbosacral spine was normal.[6] Rouchon was seen again in 1995 complaining of low back pain and was given a prescription for pain medication.[7] X-rays of the lumbar spine showed no abnormalities.[8]

On April 12, 1996, Rouchon was examined at the Medical Center of Louisiana at New Orleans ("MCL").[9] An electromyographic (EMG) study was normal.

---

[4] Tr. 632.

[5] Tr. 623.

[6] Tr. 625.

[7] Tr. 617-619.

[8] Tr. 616.

[9] Tr. 243-244.

On August 6, 1997, at the request of DDS, Rouchon underwent a consultative examination by Dr. John Humphries, an orthopedist.[10]  Rouchon had no abnormalities of his extremities, and was able to stand, sit and walk.  Dr. Humphries concluded that Rouchon could return to gainful employment.

In 1998, Rouchon underwent cortisone injections to his back, but he continued to complain of pain.[11]  Rouchon was diagnosed with: "fibromyalgia (more likely myofascial pain syndrome lumbar region)", bilateral carpal tunnel syndrome, and "psychological overlay" with "significant pain behavior."[12]  Rouchon was prescribed wrist splints to help with his reports of numbness and tingling in his hands.[13]  A June 23, 1999, report from MCL shows that in 1997 an EMG indicated that Rouchon had bilateral carpal tunnel syndrome.[14]

On January 5, 2000, Rouchon had a routine examination at MCL which revealed muscle spasm in his low back and a possible sebaceous cyst on his back.[15]  Rouchon was advised to monitor the cyst for changes.[16]  On January 25, 2000, a nerve conduction study was normal with

---

[10] Tr. 168.

[11] Tr. 252.

[12] Tr. 252.

[13] Tr. 251.

[14] Tr. 240.

[15] Tr. 232, 237.

[16] Tr. 233.

no evidence of carpal tunnel syndrome or neuropathy.[17] In October, 2000, Rouchon complained of pain and numbness in his neck and shoulders which radiated down into his arms.[18]

At the request of DDS, Rouchon was examined by Dr. Anthony Ioppolo, a neurological surgeon on February 8, 2001.[19] Dr. Ioppolo concluded:

> This gentleman reports that he has been diagnosed as having fibromyalgia, carpal tunnel syndrome, ulnar nerve entrapment, and low back instability. I have no records concerning any of these things. I can only say on my examination that I find no focal neurological deficits. The patient does not have any ulnar sensitivity or signs of entrapment. He does not have any findings for carpal tunnel syndrome. He has no focal neurological deficits and has good motor and sensory strength. He only complains of some pain subjectively on bending and palpation. He is able to walk without difficulty in the exam room and I really can see nothing objective that would indicate that this gentleman has any disability.[20]

On December 20, 2003, at the request of DDS, Rouchon was examined by Dr. John Canterbury, an internist.[21] Dr. Canterbury noted that Rouchon complained of having lumbar spine pain, carpal tunnel syndrome, and fibromyalgia. Rouchon did not appear to be in any obvious discomfort. Rouchon's strength examination was 5/5 bilaterally on all extremities. Dr. Canterbury was not certain whether Rouchon had carpal tunnel syndrome because his symptoms indicated more of a problem with his cervical neck. Further, Dr. Canterbury found that Rouchon did "not have any obvious point tenderness" indicative of fibromyalgia, however, some of his

---

[17] Tr. 235. The record also contains part of a "Prehearing Procedure" form completed by Dr. Pedro Romgura indicating that the patient cannot walk more than ½ block, stand/walk more than 10 minutes continuously. There is no report or other information concerning Dr. Romgura's examination, if any, of Rouchon. Rouchon does not dispute the ALJ's decision not to give weight to this opinion. Tr. 635-637.

[18] Tr. 230.

[19] Tr. 199-206.

[20] Tr. 199.

[21] Tr. 638-645.

diffuse muscle pain may be consistent with fibromyalgia. Rouchon's lumbar spine examination was normal. Dr. Canterbury completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) indicating that Rouchon had no limitations on his ability to sit, walk, stand, or lift, however, because of his subjective complaints of pain in his upper extremities, his pushing and pulling were limited.

**Mental impairments:** Rouchon was examined at St. Mary Mental Health Center ("St. Mary") on December 18, 1998.[22] There were no symptoms of depression noted. In August, 1999, Rouchon reported that his mother had recently died and he was depressed and anxious. Rouchon was diagnosed with depressive disorder and prescribed an anti-depressant.[23] On December 10, 1999, Rouchon was tired, but he reported that he did not have much depression.[24] In August, 2000, Rouchon reported that he was not sleeping due to pain, and that he was feeling depressed.[25]

On January 11, 2001, Rouchon's examination at St. Mary's showed that he was alert, friendly, and doing well on medication.[26] In July, 2001, Rouchon reported having some problems because of the anniversary of his mother's death.[27] On October 5, 2001, Rouchon was a little more depressed than usual because his wife had lost her job.[28]

---

[22] Tr. 223.

[23] Tr. 215-222.

[24] Tr. 213.

[25] Tr. 211.

[26] Tr. 210.

[27] Tr. 630.

[28] Tr. 667.

9

On July 11, 2002, Rouchon reported that his holidays were good, he was sleeping well, and his appetite was good.[29] In May, 2002, Rouchon was "doing well."[30] On January 10, 2003, Rouchon was alert, had a normal mood, and was doing well.[31] On January 11, 2003, Rouchon continued to do well, with no complaints of depression or sleep problems.[32]

On December 22, 2003, Rouchon underwent a consultative psychological evaluation by Alfred Buxton, Ph.D, a clinical psychologist.[33] Rouchon reported that his sleep was variable, he had a good appetite, and his energy was poor. He stated he could cook, shop, manage money, and engage in independent local travel. Dr. Buxton noted that Rouchon's intellect was normal, his ability to attend and concentrate was good, pace was even, judgment was good, cognition was clear and cogent, and mood was even. Rouchon was alert, responsive, oriented, and had neither suicidal ideation nor crying spells. Dr. Buxton diagnosed Rouchon with "Major Depressive Disorder, Recurrent, Without Psychotic Features, in fairly good remission with medication." Dr. Buxton concluded that it is unlikely that Rouchon would be able to maintain employment because he would not "perform in a reliable and dependable fashion" and he would probably deteriorate under the accumulation of frustration and stress, although he would be able to maintain adequate interpersonal relationships with co-workers.[34]

---

[29] Tr. 628.

[30] Tr. 665.

[31] Tr. 663.

[32] Tr. 661.

[33] Tr. 646-648..

[34] Tr. 648.

On April 23, 2004, Rouchon was examined at St. Mary.[35] Rouchon was cooperative and had a normal mood.

**Administrative hearing**: Rouchon testified that his low back pain and cyst prevent him from bending.[36] He stated he has a hard time sleeping because his back pain prevents him from turning over at night.[37] He has pain in his legs and his hands become numb and swollen.[38] He helps his four children with school homework and activities.[39]

**Weight Given to Dr. Buxton's Opinion**

In this case, the final decision of the Commissioner was that of the Appeals Council rather than the ALJ.[40] In its decision, the Appeals Council did not specifically address Dr. Buxton's opinion, but rather adopted the ALJ's discussion of the medical facts. Thus, with reference to the treatment of Dr. Buxton's report, proper focus is on the ALJ's discussion. Rouchon argues that the ALJ erred in failing to adopt Dr. Buxton's opinion that Rouchon could not maintain employment

The ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). Although the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a

---

[35] Tr. 658.

[36] Tr. 763.

[37] Tr. 765-766.

[38] Tr. 764, 766.

[39] Tr. 769.

[40] Tr. 3-14, 20-32.

claimant's disability status." Martinez v. Chater, 64 F.3d 172, 175-176 (5th Cir. 1995), quoting, Moore v. Sullivan, 919 F.2d 901, 905 (5th cir. 1990). "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id. quoting, Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987). Further, the ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate issue of disability is reserved to the Commissioner. The opinion of a treating physician on this issue is not entitled to controlling weight, although it should be given appropriate weight depending on whether it is supported by the medical record. 20 C.F.R. Sec. 416.927 (e) (1988).

As noted above, Dr. Buxton opined that Rouchon could not maintain employment due to his inability to be reliable and dependable, and the expectation that he may deteriorate under the accumulation of work stress.[41] The ALJ discounted this finding:

> [Dr. Buxton's] opinion is not support[ed] by the examination findings or the history given by the claimant or the medical documents previously presented. Although the medical evidence indicates that the claimant has a history of major depression, the claimant has exhibited no psychotic features. His activities of daily living, as indicated in the report, are within normal limits. The claimant has adequate concentration in that he helps his children with school projects and interacts well with them. He does not have frequent crying spells. He has a positive self image. After the death of his mother the claimant was able to engage in and maintain a supportive and caring relationship with his common-law spouse to raise four children. The claimant has a hobby and appears to relate well with others. The claimant is stated to be capable of taking care of his own affairs. He is aware and oriented and appears capable of adequately dealing with situations. The examining physician stated in his notes that the claimant was not easily upset. Consequently, there is no support for this examining physician's assessment of decompensation within a work setting.[42]

---

[41] Tr. 28.

[42] Tr. 28.

Thus, the ALJ noted that Dr. Buxton's opinion contradicted the records of Rouchon's treating physicians as well as Dr. Buxton's own examination results. Dr. Buxton's examination showed an individual with appropriate social and family relations, the ability to concentrate and attend to tasks, who reported no problems with sleeping, eating, or emotional issues. Dr. Buxton did not explain or otherwise provide a basis for his opinion that Rouchon is unable to maintain employment.

Medical records from Rouchon's treating source, St. Mary's, shows that he has complained of occasional depression, usually associated with an external event, i.e., his mother's death and his wife's job problems, but most of the records indicate that he is doing well with few complaints. Therefore, the records from the treating facility and Dr. Buxton's own examination supports the ALJ's decision to discount Dr. Buxton's opinion concerning Rouchon's ability to maintain employment. Accordingly, there is substantial evidence supporting the ALJ's decision, and the Appeals Council did not err in adopting it.

**Mental Impairments**

Rouchon argues that the Appeals Council erred in failing to find that his depression was a severe impairment.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The Regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, § 404.1520a(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments.

Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[43] If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. 20 C.F.R. §§ 404.1530, 416.930; Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir.1987).

In the instant case, the Appeals Council applied the proper mental impairment analysis and concluded that Rouchon's mental impairment was not severe:

> The Appeals Council further considered the effects of the claimant's mental impairment on his functional abilities and adopts the Administrative Law Judge's conclusions that the claimant's mental impairment imposes: no more than mild restrictions on his activities of daily living; no more than mild difficulties in maintaining social functioning; and, no more than mild deficiencies in concentration, persistence or pace. These conclusions are consistent with the Appeals Council's finding that the claimant's depression is not a severe impairments since the impairment imposes no more than mild limitations on his ability to perform work-related activities.[44]

---

[43] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment.
2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).
3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.
4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities*. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

[44] Tr. 7.

After review of the record, the undersigned concludes that the conclusions of the Appeals Council are supported by the evidence in the record. As discussed above, Dr. Buxton's examination showed that Rouchon has few, if any, limitations in the areas of activities of daily living and social functioning, concentration, persistence, and pace. Further, Rouchon has suffered no episodes of decompensation. Thus, substantial evidence supports the Appeals Council's finding that Rouchon does not have a severe impairment. Moreover, since the Appeals Council did not stop the disability analysis at Step 2, but instead the ALJ addressed the medical evidence and the effect all of the impairments had on Rouchon's ability to work, Rouchon's contention has no merit. See, e.g., Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987) (where ALJ concluded that appellant's hypertension was of "mild medical severity," and proceeded through the sequential evaluation to conclude at the fourth and fifth steps that the appellant could perform past relevant work and a full range of light work, the court held that the ALJ did not apply an incorrect severity standard at Step 2).

**Finding of not disabled at Step 5 and conflicts between ALJ and Appeals Council**

Rouchon argues that the hypothetical question posed to the vocational expert testimony was insufficient because it did not include reference to Rouchon's carpal tunnel syndrome, did not make clear Rouchon's physical limitations, and minimized Rouchon's depressive disorder. Rouchon also argues that since the ALJ and the Appeals Council differed on whether Rouchon's mental impairment posed non-exertional limitations, the Appeals Council should have remanded the case to the ALJ for additional proceedings.

On appeal from an ALJ's decision, the Appeals Council may "affirm, modify or reject a recommended decision." 20 C.F.R. § 416.1479. In this case the Appeals Council modified the ALJ's decision, and the Appeals Council's decision was the final decision of the Commissioner.

Thus, it is immaterial that the ALJ and Appeals Council differed on some points, because the Appeals Council's decision is the final decision.

The Appeals Council specifically rejected the ALJ's determination that Rouchon's mental impairment was severe and constituted a non-exertional limitation. The Appeals Council concluded that Rouchon had the residual functional capacity to perform the full range of light work. As set forth above, the Appeals Council's decision is supported by substantial evidence of record.

Because the Appeals Council's residual functional capacity assessment was proper, the reliance on the Medical-Vocational Guidelines in determining that Rouchon is not disabled was also proper. The Medical-Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has the exertional residual functional capacity to perform substantially all of the strength demands required by work at the given level of exertion, and there are no non-exertional limitations which significantly erode the occupational base. SSR 83-10.[45] Here, because the Appeals Council determined that Rouchon can perform all of the strength demands of light work, and because the record supports the conclusion that he does not have any non-exertional limitations that significantly affect his abilities, the reliance on the Medical-Vocational Guidelines was proper. Since the Medical-Vocational Guidelines were applicable, it was unnecessary to rely on vocational expert testimony. Therefore, Rouchon's argument concerning the vocational expert testimony is without merit.

---

[45] Social Security Rulings are issued by the Social Security Administration and are based on case decisions made at the administrative levels of adjudication, federal court decisions, Commissioner's decisions, opinions of the Office of the General Counsel, and other policy interpretations of the law and regulations. Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration, in accordance with Section 422.406(b)(1) of the Social Security Regulations No. 22 (20 CFR Part 422), and are to be relied upon as precedents in adjudicating other cases.

Accordingly, because credible evidentiary choices exist which support the Appeals Council's decision, the undersigned concludes that substantial evidence supports the non-disabled finding.

## *Conclusion*

Considering the foregoing, the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**.

Signed in chambers on September 11, 2006.

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)